UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Brit F. Augborne, III, | Case No.: 2:19-cv-00447-JAD-VCF |
| Plaintiff | |
| v. | **Order Denying Motion for Summary Judgment on Due-Process Claim and Dismissing Equal-Protection Claim** |
| Timothy Filson, et al., | |
| Defendants | [ECF No. 27] |

Pro se plaintiff Brit F. Augborne, III, brings this civil-rights action under 42 U.S.C. § 1983, claiming that former Ely State Prison Associate Warden Harold Byrne violated his Fourteenth Amendment due-process rights when he placed Augborne in administrative segregation. Byrne now moves for summary judgment, arguing that Augborne's due-process rights weren't violated because he was placed in close custody, not administrative segregation, and close custody does not create an atypical and significant hardship under Supreme Court and Ninth Circuit precedent. Because I find that there is a material factual dispute about whether Augborne's placement in close custody was tantamount to administrative segregation and thus created an atypical and significant hardship for which he was denied due-process protections, I deny summary judgment. Byrne has shown, however, that Augborne's equal-protection claim against an unidentified caseworker should be dismissed for non-service. So this case proceeds to trial on Augborne's due-process claim against Byrne only, but first I refer it to this district's Pro Bono Attorney Pilot Program to attempt to find counsel willing to take Augborne's case without charge and to the magistrate judge for a mandatory settlement conference.

**Background**[1]

In 2017, while incarcerated at Ely State Prison (ESP), Augborne was assigned to a cell containing a damaged desk.[2] Several months later, prison officers searched his cell and discovered the damage, and Augborne was accused of using parts of the desk to make weapons and was charged with destruction of state property.[3] On October 27, 2017, Augborne was removed from general population and temporarily placed in administrative segregation, and he received disciplinary charges for property damage the next day.[4]

On October 31, 2017, at his preliminary hearing on the charges, Augborne pled not guilty.[5] The next day, he had an initial administrative-segregation hearing, during which he was placed in close-custody housing instead of administrative segregation.[6] Between that initial hearing and his disciplinary hearing more than two months later, Augborne's placement in close custody was not reviewed.[7] Following the disciplinary hearing, Augborne was found not guilty of the charges.[8]

Byrne submits a declaration from an ESP caseworker, which notes that Augborne was sent back to general population on January 26, 2018.[9] But in his response brief, which is sworn,

---

[1] The facts in this section are undisputed unless otherwise noted.
[2] ECF No. 27 at 3.
[3] *Id.*
[4] *Id.*
[5] *Id.*; ECF No. 27-3 at 5.
[6] ECF No. 27 at 3–4.
[7] *Id.* at 8.
[8] *Id.* at 4.
[9] ECF No. 27-7.

Augborne states that the defense's timeline is inaccurate.[10] He asserts that he was still segregated on January 22, 2018, when he was placed on red-tag status and prohibited from showering and recreation for another week.[11] He also attaches an inmate-grievance report dated May 18, 2018—four months after he was cleared of all charges—that states that he was still then "housed [c]lose custody[.]"[12]

Augborne sues Byrne and John Doe Caseworker for violating his Fourteenth Amendment rights under the Due Process Clause and Equal Protection Clause, respectively.[13] The unnamed caseworker has never been identified or served, but Byrne moves for summary judgment on Augborne's due-process claim and to dismiss the equal-protection claim for failure to serve.[14] Byrne argues that Augborne's due-process claim fails because was not entitled to the due-process protections given to those in administrative segregation because he was instead placed in close custody, which was not a significant and atypical hardship on him.[15] Augborne responds that, for many months, he was administratively segregated in all but name and denied periodic review of that segregation, all in violation of the Fourteenth Amendment.[16]

---

[10] ECF No. 30 at 2–4.
[11] *Id.*
[12] *Id.* at 5.
[13] ECF No. 1-1 (complaint); ECF No. 5 (screening order).
[14] ECF No. 27 at 2.
[15] *See id.* at 7–8.
[16] ECF No. 30; *see* ECF No. 1-1.

**Discussion**

**I.    Summary-judgment standard**

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[17]  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."[18]  A fact is material if it could affect the outcome of the case.[19]

On summary judgment, the court must view all facts and draw all inferences in the light most favorable to the nonmoving party.[20]  So the parties' burdens on an issue at trial are critical. When the moving party does not bear the burden of proof on the dispositive issue at trial, it is not required to produce evidence to negate the opponent's claim—its burden is merely to point out the evidence showing the absence of a genuine material factual issue.[21]  The movant need only defeat one element of a claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[22]

---

[17] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).  The court's ability to grant summary judgment on certain issues or elements is inherent in Federal Rule of Civil Procedure (FRCP) 56.  *See* Fed. R. Civ. P. 56(a).

[18] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

[19] *Id.* at 249.

[20] *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[21] *Celotex*, 477 U.S. at 323.

[22] *Id.* at 322.

**II.     Byrne isn't entitled to summary judgment on Augborne's due-process claim.**

      **A.     Standard for due-process claims brought under *Sandin v. Conner*[23]**

The Fourteenth Amendment's Due Process Clause prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law."[24] Incarceration does not divest inmates of their due-process rights, but they "may be diminished by the needs and exigencies of the institutional environment."[25] As interpreted by the Supreme Court in the landmark decision of *Sandin v. Conner*, the Due Process Clause doesn't create a liberty interest in a prisoner to be free from the "normal limits or range of custody [that his] conviction has authorized the [s]tate to impose."[26] And generally, "the hardship associated with administrative segregation, such as loss of recreational and rehabilitative programs or confinement to one's cell for a lengthy period of time, does not violate the [D]ue [P]rocess [C]lause because there is no liberty interest in remaining in the general population."[27]

But "a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations[.]"[28] Due-process protections arise when a prisoner's confinement "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."[29] In determining whether such a hardship exists, courts consider (1) "whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative

---

[23] *Sandin v. Conner*, 515 U.S. 472 (1995).

[24] U.S. Const. amend. XIV, § 1.

[25] *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974).

[26] *See Sandin*, 515 U.S. at 478 (cleaned up).

[27] *Anderson v. Cnty. of Kern*, 45 F.3d 1310, 1315 (9th Cir. 1995).

[28] *Wilkinson v. Austin*, 545 U.S. 209, 222 (2005).

[29] *Id.* (quoting *Sandin*, 515 U.S. at 483).

segregation and protective custody,' and thus comported with the prison's discretionary authority"; (2) the duration of the condition, and the degree of restraint imposed"; and (3) "whether the state's action will invariably affect the duration of the prisoner's sentence."[30] If the prisoner establishes under these factors that his segregation is an atypical and significant hardship, he is entitled to notice of the reason for segregation, an informal review of the evidence against him, and periodic review of his placement.[31]

### B. Material factual disputes exist about whether and for how long Augborne faced conditions mirroring administrative segregation.

Nevada Department of Corrections (NDOC) Administrative Regulation (AR) 507 contains NDOC's policies and procedures for administrative segregation.[32] AR 507 provides that those temporarily placed in administrative segregation will receive an initial administrative-segregation hearing within three working days and a review every thirty days following that hearing.[33] Under that regulation, any additional non-disciplinary restrictions imposed on an inmate in administrative segregation must be recorded in writing, and those in administrative segregation "will be provided the means to keep themselves clean and groomed."[34] AR 521 governs NDOC's custody categories and criteria.[35] Under this regulation, close custody includes assignment to "specialized housing areas . . . such as administrative or protective segregation, or

---

[30] *Brown v. Or. Dep't of Corr.*, 751 F.3d 983, 987 (9th Cir. 2014).

[31] *See Hewitt v. Helms*, 459 U.S. 460, 476–77 & n.9 (1983) *disapproved of in part on other grounds by Sandin*, 515 U.S. at 482–83.

[32] Administrative Regulation 507 (Administrative Segregation), Nevada Department of Corrections (effective May 20, 2010).

[33] *Id.* at §§ 507.01(2)(C), (2)(I).

[34] *Id.* at §§ 507.01(4)(A)(3), (4)(F).

[35] Administrative Regulation 521 (Custody Categories and Criteria), Nevada Department of Corrections (effective Apr. 13, 2022) (temporary edition).

6

disciplinary segregation[.]"[36] The conditions of confinement for close custody include "[a]ssignment to single cells for administrative or disciplinary segregation" or "[h]ousing [otherwise] separated from the general population of the institution."[37]

Given these regulations, Augborne has established a genuine material factual dispute about whether and for how long he was subject to confinement tantamount to administrative segregation.[38] The parties also dispute whether his confinement was an atypical and significant hardship in comparison to everyday prison life, including what Augborne was or wasn't allowed to do while in close custody. But is undisputed that, after the initial hearing, Augborne's segregation from ESP's general population—which lasted anywhere from three to eight months, if not longer[39]—was never reviewed again. So, if Augborne was administratively segregated in all but name, and that confinement was an atypical and significant hardship, his due-process rights were violated. The factual disputes over those prerequisite questions must be resolved by a jury. Augborne's due-process claim against Byrne thus survives summary judgment.

---

[36] *Id.* at § 521.02(2)(A).

[37] *Id.* at §§ 521.02(3)(B)–(C).

[38] Another judge in this district who was confronted with these regulations in a materially similar context recently came to the same conclusion and adopted a magistrate judge's report and recommendation to deny an ESP official summary judgment. *Burns v. Cox*, WL 3549845, at *2–*5 (D. Nev. June 8, 2020), *report and recommendation adopted*, 2020 WL 3546852 (D. Nev. June 29, 2020) (Du, C.J.). Procedurally and factually, this case merits the same result.

[39] Byrne seems unsure about the length of Augborne's segregated confinement, couching statements with "appears." ECF No. 27 at 8 (noting that Augborne's placement in close custody "*appears to* have lasted for the duration of the adjudication of his administrative charges" (emphasis added)). His lack of certainty highlights the existence of fact issues.

### III. Augborne's equal-protection claim against John Doe Caseworker is dismissed.

When I screened Augborne's complaint in 2020, I also let his Fourteenth Amendment equal-protection claim proceed against John Doe Caseworker.[40] That doe defendant has not been identified or served, and FRCP 4(m)'s 90-day deadline to serve him has long passed, so Byrne requests that the equal-protection claim be dismissed.[41] Because Augborne hasn't responded to that request, let alone shown good cause to excuse his failure to serve this unidentified defendant, I grant the request and dismiss the claim.

### Conclusion

IT IS THEREFORE ORDERED that defendant former Associate Warden Byrne's motion for summary judgment **[ECF No. 27] is GRANTED in part and DENIED in part**:

- Summary judgment is **DENIED** on Augborne's Fourteenth Amendment due-process claim, which proceeds to trial against Defendant Byrne, and

- Augborne's equal-protection claim against John Doe Caseworker is **DISMISSED** under FRCP 4(m) for failure to identify and serve this doe defendant.  **The Clerk of Court is DIRECTED to TERMINATE John Doe Caseworker as a party to this case**.

IT IS FURTHER ORDERED that **this case is REFERRED to the Pro Bono Attorney Pilot Program** for appointment of counsel for all purposes through the conclusion of trial, and the Clerk of Court is DIRECTED to **forward this order to the Pro Bono Liaison.**

---

[40] *See* ECF No. 5 at 6–7.

[41] ECF No. 27 at 2; *see* Fed. R. Civ. P. 4(m).

Finally, IT IS ORDERED that this case is **REFERRED to the magistrate judge for a mandatory settlement conference.** The parties' obligation to file a proposed joint pretrial order is stayed until 10 days after the settlement conference, should this case not resolve.

_____
U.S. District Judge Jennifer A. Dorsey
August 8, 2022